# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| RUTH MERCADO ) | CASE NO. 16-81723 |
| ) | |
| Debtor. ) | CHAPTER 13 |

| | |
|---|---|
| RUTH MERCADO ) | |
| Plaintiff. ) | |
| ) | ADVERSARY PROCEEDING |
| v. ) | NO. 18-80056 |
| ) | |
| FANNIE MAE and/or SETERUS INC., ) | |
| and BROCK & SCOTT, PLLC ) | |
| Defendants. ) | |

## FANNIE MAE AND SETERUS INC.'S MOTION TO DISMISS

Plaintiff's Complaint fails to state a claim against Fannie Mae and Seterus upon which relief may be granted because (1) the Notice of Foreclosure Sale was not an act to collect; (2) the "mini Miranda" language is required by the FDCPA; and (3) an agency relationship between the sender of the notice and Fannie Mae and Seterus is not alleged.

### Relevant Background

1. On December 17, 2007, Plaintiff and her husband, Lance Larka, executed a mortgage (the "Mortgage") in favor of Synovus Mortgage Corp. to purchase certain real property located at 2020 Stanford Drive SW, Huntsville, Alabama 35801 (the "Property"). *See* Claims Register, at Claim 5-1. On that same day, Plaintiff executed a Note (the "Note") in favor of

1

Synovus in the amount of Eighty-Six Thousand Dollars, the repayment of which is secured by the Property. *See id.*

2. On April 28, 2012, the Mortgage was assigned to Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing LP ("BOA"). *See id.* On July 31, 2013, the Mortgage was again assigned to Federal National Mortgage Corporation ("Fannie Mae"). *See id.* Seterus, Inc. ("Seterus") is the current mortgage servicer for Fannie Mae.

3. On June 14, 2016, Plaintiff filed a Chapter 13 bankruptcy petition and listed Seterus as a secured creditor on her Schedule D. *See* BK Doc. 11, at Schedule D. On October 10, 2016, Seterus filed its Proof of Claim in the amount of $69,911.07 secured by the Mortgage. *See* Claims Register, at Claim 5-1. At the time the Proof of Claim was filed, Seterus listed $3,535.58 in arrears. *See id.*

4. On November 1, 2016, Seterus filed a Motion for Relief from Stay and Co-Debtor Stay (the "MFRS"), which stated that the mortgage was due post-petition for the months of August 2016 to November, 2016. *See* BK Doc. 50. This Court conditionally denied Seterus' MFRS on November 29, 2016, but stated:

> [h]owever, should the Debtor default under the mortgage agreement between the parties beginning December 2016, the [MFRS] is granted if the Creditor gives the Debtor, the Debtor's attorney, and Chapter 13 Trustee twenty (20) days written notice of opportunity to cure. If the default is not cured within twenty (20) days from the date the notice is issued, then the stay shall lift without further Order from the Court. Further, the Creditor is allowed to communicate with the Debtor any communication required under the note and mortgage or under state law. Waiver of default shall not constitute waiver of subsequent default.

*See* BK Doc. 66.

5. Plaintiff filed a Notice of Change of Address on February 22, 2018 which listed a new address of "6830 SW Garden Home Rd., Portland, Oregon 97223." *See* BK Doc. 81.

6. On May 30, 2018, Defendant Brock & Scott, LLC ("Brock & Scott"), sent a Notice of Foreclosure Sale to Plaintiff. *See* AP Doc. 1 at Exhibit A. The Notice of Foreclosure Sale contained the required FDCPA "mini Miranda" language. *Id.*

7. Plaintiff filed this Adversary Proceeding on June 7, 2018 against Seterus and Fannie Mae (Seterus and Fannie Mae are, collectively, the "Defendants") for violation of the automatic stay. *See* AP Doc. 1.

## **Argument and Authorities**

Plaintiff's claim for violation of the automatic stay against the Defendants is due to be dismissed for failure to state a claim. In order to survive a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) the allegations of a plaintiff's complaint "must be enough to raise a right to relief above the speculative level, on the assumptions that all the allegations in the complaint are true (even if doubtful in fact)." *See Lanfear v. Home Depot, Inc.*, 679 F. 3d 1267, 1275 (11th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Accordingly, the plaintiff is required to "plead 'a claim to relief that is plausible on its face.'" *Id.*; *see also Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F. 3d 1211, 1215 (11th Cir. 2012) ("[A] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

**I. THE DEFENDANTS DID NOT VIOLATE THE AUTOMATIC STAY BECAUSE THE NOTICE OF FORECLOSURE SALE IS NOT AN ACT TO COLLECT.**

The Notice of Foreclosure Sale sent by Brock & Scott did not attempt to collect a debt from Plaintiff. As to debts secured by a mortgage on residential real property, like the debt at issue in this case, "there are valid reasons to communicate information about the debt that have nothing to do with attempting to collect it against the debtor personally." *In re Thomas*, 554 B.R. 512, 518-19 (Bankr. M.D. Ala. 2016) (citing *Cousins v. CitiFinancial Mortg. Co.*, 404 B.R. 281, 286-87

3

DOCSBHM\2234932\2

Case 18-80056-CRJ   Doc 8   Filed 07/13/18   Entered 07/13/18 08:38:53   Desc Main
Document    Page 3 of 10

(Bankr. S.D. Ohio 2009)). In that regard, a debtor's decision to retain property secured by a mortgage in his or her bankruptcy case informs what information a debtor might need as to the debt. *See Thomas*, 554 B.R. at 519; *In re Connor*, 366 B.R. 133, 138 (Bankr. D. Haw. 2007) ("While Mr. Connor was in chapter 13, he had an interest in receiving current information about the status of his mortgage."). "Communication of information regarding a residential mortgage debt is not an 'act to collect' if there is a valid purpose in communicating the information and if the communication itself is informational only, i.e., **it cannot overtly demand payment or have the effect of coercing payment**." *Thomas*, 554 B.R. at 520 (citing *In re Connor*, 366 B.R. 133, 137-38 (Bankr. D. Haw. 2007) (emphasis added here); *In re Henriquez*, 536 B.R. 341, 346 (Bankr. N.D. Ga. 2015) (purely information letters did not violate the discharge injunction). The Bankruptcy Court for the Middle District of Alabama analyzed this issue in *In re Golden*, 568 B.R. 838 (Bankr. M.D. Ala. 2017) and held:

> Where, as here, a creditor has the right to foreclose a mortgage and where the creditor is required to give the debtor certain notices either under the terms of the mortgage or applicable law, it necessarily follows that the giving of such notices does not violate the discharge injunction. … Debtors should not [be] permitted to 'game the system' where creditors are found to violate the discharge injunction in they give various notices and violate applicable state law if they do not. A creditor who acts reasonably and in good faith should not be placed on the horns of a dilemma. The point is, that to lawfully foreclose a mortgage, a mortgagee must send certain notices to the mortgagor. If the act of providing these notices is unlawful, the mortgagee's right to foreclose is destroyed and, by extension, the mortgage is destroyed as well.

568 B.R. at 841-42; *In re Thomas*, 554 B.R. at 520 (holding that purely informational letters regarding residential mortgage debt is not an "act to collect" within the context of the automatic stay).

Following the Courts' reasoning in *Golden* and *Thomas*, the Notice of Foreclosure Sale sent to Plaintiff was **not** an act to collect. The Notice itself does not demand payment nor have the

4

effect of coercing payment – in fact, it does not reference payment at all. *See* AP Doc. 1, at Exhibit A. Specifically, the Notice states:

> Our records and research indicate that you may have an interest in the above property. A foreclosure sale will occur within the legal hours of sale on July 1, 2018 regarding the above-referenced property, in accordance with the terms forth in the enclosed Notice of Foreclosure Sale. The recording information for the Mortgage can be found in the Notice.

*Id*. The Notice is purely informational in that it apprises Plaintiff that the Property will be sold at foreclosure sale. It does not demand payment, nor give an amount due on the loan. *See id; see also Saint Vil v. Perimeter Mortg. Funding Corp.*, 630 Fed. Appx. 928, 932 (11th Cir. 2015) ("But unlike the communications in those cases, SSH's notices did not demand payment of any underlying debt. They simply provided notice of the foreclosure, as required by Georgia law."); *In re Brown*, 481 B.R. 351, 359 (Bankr. W.D. Penn. 2012) ("The documents include generic informational letters and notices in which no demand for payment is made. The Court finds that such general notices do not constitute violations of the discharge injunction."). The Notice asks nothing of the Plaintiff and details no consequences.

Further, Paragraph 22 of the underlying Mortgage states, "[i]f Lender invokes the power of sale, Lender shall give a copy of a notice to Borrower in the manner provided in Section 15. Lender shall publish the notice of sale once a week for three consecutive weeks in a newspaper published in Madison County, Alabama …" *See* Claims Register, at Claim 5-1. Defendants properly gave notice to the Plaintiff of the Notice of Foreclosure Sale in accordance with the Mortgage. The Notice of Foreclosure Sale, as a whole, was not an act to collect and did not violate the automatic stay.

## II. THE LANGUAGE RELIED UPON BY PLAINTIFF WAS SPECIFICALLY INCLUDED TO COMPLY WITH THE FDCPA.

It is well established law in the Eleventh Circuit that a "debt collector"[1] for purpose of the FDCPA must provide certain disclosures when communicating with a consumer. "The [FDCPA] requires that debt collectors include certain disclosures in an initial communication with a debtor, or within five days of such communication." *Church v. Accretive Health, Inc.*, 654 Fed. Appx. 990, 995 (11th Cir. 2016) (citing 15 U.S.C. § 1692(e)(11); 1692g(a)(1)—(5)); *see Summerlin v. Shellpoint Mortgage Services*, 165 F. Supp. 3d 1099, 1113-14 (N.D. Ala. 2016) ("But even if Shellpoint were a debt collector and the foreclosure were a debt collection, the Notice itself does not violate the FDCPA . . . '[S]ending just the statutorily required notice of foreclosure is not enough' to be considered debt collection." (quoting *Saint Vil v. Perimeter Mortg. Funding Corp.*, 630 Fed. Appx. 928, 932 (11th Cir. 2015)); *see also Hart v. Credit Control, LLC*, 871 F. 3d 1255, 1258 (11th Cir. 2017) ("The FDCPA requires the "mini Miranda warning" to be given in the initial communication between a debt collector and consumer. Specifically, this warning requires that the debt collector disclose that he or she is 'attempting to collect a debt and that any information obtained will be used for that purpose.'") (quoting 15 U.S.C. § 1692e(11))).

Further, the FDCPA specifically mandates that a debt collector must make these disclosures on each *subsequent* communication with the debtor. *See* 15 U.S.C. § 1692(e). Section 1692(e) states in part that the following is a violation:

> (11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, **and the failure to disclose in subsequent communications that the communication is from a debt collector**, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

---

[1] For purposes of any claim against Seterus and Fannie Mae for violation of the FDCPA, Defendants dispute that they are "debt collectors."

15 U.S.C. § 1692(e)(11) (emphasis added here). *See Smith v. Select Portfolio Servicing, Inc.* No. 18-CV-2525, 2018 WL 3077795, at *2 (E.D. Pa. June 21, 2018) ("SPS was required to make clear from the perspective of the least sophisticated debtor that the communications were sent by a debt collector with the purpose of collecting a debt from Smith. By clearly stating that each communication was sent for the purpose of debt collection, SPS provided the warnings required to make clear it was acting as a debtor collector in accordance with the FDCPA." (analyzing whether subsequent communications to a debtor complied with Section 1692e(11))). It follows that the Notice of Foreclosure sale required the mini-Miranda language in order to be in compliance with the FDCPA's disclosure requirements, and it was not included to demand or coerce payment in violation of the automatic stay.

In addition, if the Notice of Foreclosure Sale failed to include the mini-Miranda language, Plaintiff could have a cause of action related to the failure to disclose that the communication was from a debt collector. *See generally*, 15 U.S.C. § 1692; *see also Frazier v. Absolute Collection Service, Inc.*, 767 F. Supp. 2s 1354, 1366 (N.D. Ga. 2011) ("[u]nder the FDCPA, a debt collector that fails to comply with any provision of the FDCPA is liable for, *inter alia*, 'in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000.'" (quoting 15 U.S.C. 1692k(a)(2)(A))). "The provisions of the FDCPA are clear that in initial or *subsequent* communications, it must be disclosed that the communication is from a debt collector." *Drossin v. National Action Financial Services, Inc.*, 641 F. Supp. 2d 1314, 1319 (S.D. Fla. 2009); *Fouche' v. Shapiro & Massey L.L.P.*, 575 F. Supp. 2d 776, fn. 1 (S.D. Miss. 2008) ("Further, the FDCPA requires that a debt collector place a notice on all communications to the debtor that the communication is part of a collection effort, and that any information obtained will

be used for that purpose. Failure to do so is considered a violation of the FDCPA. Massey's letter included all the referenced disclosures.").

Moreover, the Bankruptcy Code does not preclude the FDCPA in this context. *See Neal v. Atlas Acquisitions, LLC*, 2015 WL 5687785, at *5 (M.D. Fla. 2015) ("A review of those decisions discloses that the majority of the cases finding that the Bankruptcy Code did not preclude the FDCPA involved claims based on violations of the automatic stay and discharge injunction provisions of the Bankruptcy Code, while those finding the FDCPA claim to be precluded mostly involved claims based on the filing of inflated or stale proofs of claim like the one Neal asserts here."); *see also In re Pariseau*, 395 B.R. 492, 494 (Bankr. M.D. Fla. 2008) ("although other courts have applied the FDCPA in bankruptcy cases, they have done so only in the very *narrow* context of situations involving the automatic stay or dischargeability." (emphasis in original)); *In re Marshall*, 491 N.R. 217, 227 (Bankr. S.D. Ohio 2012); *In re Atwood*, 452 B.R. 249, 252-53 (Bankr. D.N.M.). In accordance, compliance with the FDCPA was not excused by Plaintiff's underlying Bankruptcy.

### III. IN THE ALTERNATIVE, PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED BECAUSE IT FAILS TO ALLEGE AN AGENCY RELATIONSHIP BETWEEN BROCK & SCOTT AND THE DEFENDANTS.

Plaintiff attempts to hold the Defendants accountable for the Notice of Foreclosure Sale sent by Brock & Scott, but fails to allege any sort of agency relationship. *See generally*, AP Doc. 1. Under Alabama law, in order to establish an agency relationship a party must present sufficient evidence that such relationship existed between the parties. *See John Deere Const. Equipment v. England*, 883 So. 2d 173, 180 (Ala. 2003) (holding that evidence of a dealership agreement between Warrior and Deere was insufficient to establish an agency relationship); *see also Franklin v. Mitchell*, 87 So. 3d 573, 580-81 (Ala. Civ. App. 2011) ("[u]nder Alabama law, the test of agency

8

is the right of control, whether exercised or not. For one to be an agent, the other party must retain the right to direct the manner in which the business shall be done, as well as the results to be accomplished, or, in other words, not only what shall be done, but how it shall be done. Control must be proven; and proof of control requires more than proof of a mere right to determine if the person claimed to be an agent is conforming to the requirements of a contract." (internal citations omitted)).

In this case, Plaintiff has failed to allege an agency relationship between Brock & Scott and the Defendants. Plaintiff merely alleges that the Defendants "caused to be sent" the Notice of Foreclosure Sale. *See* AP Doc. 1, at ¶¶ 3 and 11. However, the letter was clearly sent by Brock & Scott. *See* AP Doc. 1, at Exhibit A. As such, Plaintiff cannot hold Defendants liable for the actions of Brock & Scott because she fails to establish an agency relationship between Brock & Scott and the Defendants.

THEREFORE, Fannie Mae and Seterus, Inc. respectfully request that this Court dismiss the Complaint against them for failure to state a claim upon which relief may be granted.

Respectfully submitted,

/s/ Meghan A. Salvati
Thomas B. Humphries
Meghan A. Salvati
**Counsel for Fannie Mae and Seterus, Inc.**

**OF COUNSEL:**
**SIROTE & PERMUTT, P.C.**
2311 Highland Avenue South
Post Office Box 55727
Birmingham, AL 35255-5727
Tel.:   (205) 930-5100
Fax:   (205) 930-5101
thumphries@sirote.com
msalvati@sirote.com

9

DOCSBHM\2234932\2

Case 18-80056-CRJ    Doc 8    Filed 07/13/18    Entered 07/13/18 08:38:53    Desc Main
Document      Page 9 of 10

## CERTIFICATE OF SERVICE

       I hereby certify that on July 13, 2018 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will give notice of such filing to the following:

John C. Larsen
LARSEN LAW P.C.
1733 Winchester Road
Huntsville, AL 35811
john@jlarsenlaw.com

                                               /s/ Meghan A. Salvati
                                               OF COUNSEL